IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| James M. Branham, | ) | C/A No.: 1:11-1246-JFA-SVH |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| Sheriff Bruce M. Bryant, sued in his individual capacity; John A. Clark, | ) | |
| Defendants. | ) | |

Plaintiff James M. Branham ("Plaintiff"), proceeding *pro se* and in forma pauperis, brought this action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights while he was a pretrial detainee being transferred to and incarcerated at York County Detention Center ("YCDC"). Plaintiff names Sheriff Bruce M. Bryant ("Sheriff Bryant") and Deputy John A. Clark[1] ("Deputy Clark") (collectively "Defendants"), employees of York County Sherriff's Office ("YCSO"), as Defendants. This matter is before the court on Defendants' Motion for Summary Judgment. [Entry #33]. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2)(d) (D.S.C.). Because the motions are dispositive, this Report and Recommendation is entered for review by the district judge.

---

[1] Though originally identified as John Doe in the complaint, defendants later identified Deputy Clark as the officer who transported Plaintiff to YCDC. [Entry #33-1 at 1].

I.   Factual and Procedural Background

Plaintiff alleges that while being transported from the Cherokee County Detention Center in Georgia to YCDC on July 17, 2009, his leg restraints were too tight and caused him severe pain. [Entry #1 at 3]. He claims defendant Deputy Clark repeatedly ignored his complaints during the trip. *Id.* Upon arrival at YCDC, Plaintiff contends his right leg was swollen and infected from ankle to knee. *Id.* Plaintiff alleges "several officers and various staff members" ignored his continued complaints and his cellmate's three attempts to get medical attention for Plaintiff. *Id.* at 3–4. He was eventually escorted to see the YCDC nurse who gave him antibiotics. *Id.* at 4.

The nurse's notes indicate she saw Plaintiff on July 19, 2009. [Entry #33-15 at 1]. Plaintiff complained of right lower leg rash and pain. *Id.* The nurse observed a "red warm area from ankle to mid calf with several abrasions," diagnosed probable cellulitis, and prescribed a seven-day treatment of Keflex. *Id.* The nurse's notes do not state what may have caused the cellulitis.

Plaintiff claims he posted bond and was released on July 19, 2009, at which time a friend took photographs of his leg. [Entry #1 at 4]. Plaintiff went to the emergency room at Northside Hospital in Cherokee, Georgia on July 24, 2009. [Entry #55-2 at 2]. The emergency room report indicates Plaintiff "apparently was incarcerated, had cuffs around both feet, apparently has developed an infection, was transported up to South Carolina where he stayed for a week." *Id.* Plaintiff reported his symptoms had improved on Keflex, but stated he had run out of the prescription and still had continued erythema and swelling in his right lower leg. *Id.* The treating physician prescribed pain medicine and a

2

new antibiotic and instructed Plaintiff to return for any problems or worsening symptoms. *Id.* at 3. The record also notes Plaintiff's glucose was high and that his probable new-onset diabetes likely contributed to his cellulitis. *Id.* Plaintiff alleges he later followed up with both his personal doctor and a dermatologist regarding the problems with his leg. [Entry #1 at 4].

Plaintiff sent a handwritten document entitled "York County Sheriff's Dept Grievance Form" to Sheriff Bryant on March 15, 2011. [Entry #33-12]. In it, Plaintiff summarizes his allegations regarding the tight leg restraints and his subsequent injuries. *Id.* He also notes that he is attempting to exhaust his administrative remedies. *Id.* General counsel for YCSO replied on April 6, 2011 informing Plaintiff that, following an investigation, YCSO determined Plaintiff was provided with appropriate medical treatment and that YCSO was not liable for any of his alleged damages. [Entry #33-13 at 1–2]. YCSO also noted that Plaintiff failed to file his grievance within 72 hours of the incident or event that is the basis for his grievance as required by Section 609.00 of the York County Detention Center Inmate Handbook. *Id.* at 1. Despite this assertion in the April 6, 2011 letter, Defendants have not alleged failure to exhaust administrative remedies as a basis for summary judgment.

Plaintiff filed this lawsuit on May 25, 2011. [Entry #1]. He seeks compensatory damages for the alleged physical and emotional injuries he claims to have sustained during the transport and for Defendants' alleged failure to provide adequate medical care. *Id.* at 5. He also seeks punitive damages. *Id.*

Defendants filed their motion for summary judgment on December 13, 2011. [Entry #33]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment procedures and the possible consequences if he failed to respond adequately to Defendants' motion. [Entry #34]. Plaintiff filed a timely response in opposition to Defendants' motion on January 3, 2012 [Entry #41], Defendants filed a reply [Entry #45], and Plaintiff filed a sur-reply [Entry #58]. Plaintiff filed additional supporting evidence on February 10, 2012 [Entry #49; Entry #50] and March 30, 2012 [Entry #55]. Having carefully considered the parties' submissions and the record in this case, the court recommends granting Defendants' motion for summary judgment in part and denying it in part.

II. Discussion

    A. Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other

materials; " or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

    B.    Analysis

        1.    Liability of Sheriff Bryant

Defendants argue Sheriff Bryant must be dismissed because Plaintiff makes no allegations against him and he cannot be held liable on a theory of *respondeat superior* in a § 1983 case. The doctrine of *respondeat superior* generally is inapplicable to § 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action. *See Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Fisher v. Wash. Metro. Area Transit Auth.*, 690

5

F.2d 1133, 1142–43 (4th Cir. 1982).  Higher officials may be held liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization.  *Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984), *cert. denied*, *Reed v. Slakan*, 470 U.S. 1035 (1985).

Plaintiff has not alleged that Sheriff Bryant was personally responsible for the incident at issue or acted in any way other than a supervisory role.  Further, Plaintiff has not shown that Sheriff Bryant was deliberately indifferent to, or tacitly authorized, any of the actions or inactions of Deputy Clark.  Thus, Plaintiff has failed to show that Sheriff Bryant is individually liable or liable on a theory of respondeat superior, and it is recommended that the claims against Sheriff Bryant be dismissed.

2. Deliberate Indifference to Serious Medical Needs

Plaintiff asserts a claim for deliberate indifference to serious medical needs.  He claims he "complained [about his injuries] to several officers and various staff members but was ignored."  [Entry #1 at 3–4].  He further alleges that the day after he was transported to YCDC he could not walk without help and contends his cellmate made three unsuccessful attemps to get Plaintiff medical attention.  *Id.*  Plaintiff admits, and the nurse's records show, that he was treated by the YCDC on July 19, 2009, two days after his arrival at YCDC.  [Entry #33-15 at 1].

Defendants seek summary judgment on this claim on the grounds Plaintiff made no allegations against either named defendant as persons who denied him medical treatment.  [Entry #33-1 at 11].  Defendants further argue that even if they had

participated in Plaintiff's medical care, they have qualified immunity because Plaintiff has provided no evidence of his alleged repeated requests for medical attention and records show that he was treated by YCDC medical staff. *Id.*

The standard for reviewing medical claims of pretrial detainees is essentially the same as that for a convicted prisoner under the Eighth Amendment—deliberate indifference to serious medical needs. *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992); *Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir. 1988) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)). In *Estelle v. Gamble*, the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain." *Id.* (quoting *Gregg v. Georgia*, 428 U.S. 153, 169–73 (1976)). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

*Estelle*, 429 U.S. at 103–105 (citations and footnotes omitted).

In *Farmer v. Brennan*, the Supreme Court clarified that an officer must have "acted or failed to act despite his knowledge of a substantial risk of serious harm." 511 U.S. 825, 842 (1994). Additionally, the *Farmer* court noted that "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence" and

7

that "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.*

Plaintiff's claim for deliberate indifference regarding his medical care is based on his assertion that he was not given medical care when he requested it. Plaintiff has made no allegations against either defendant related to his alleged denial of medical care nor has he provided any evidence to show that his alleged requests for treatment were disregarded. On the contrary, the undisputed evidence shows Plaintiff was treated by the YCDC medical staff on July 19, 2009. Because Plaintiff has failed to provide evidence to support his claim that Defendants were deliberately indifferent to his serious medical needs, the undersigned recommends Defendants' motion for summary judgment be granted on this claim.

    3. Excessive Force Claim

Plaintiff also asserts a claim of excessive force by Deputy Clark. An excessive force claim of a pretrial detainee or arrestee is governed by the Due Process Clause of the Fourteenth Amendment. *Orem v. Rephann*, 523 F.3d 442 (4th Cir. 2008) (quoting *Taylor v. McDuffie*, 155 F.3d 479, 483 (4th Cir. 1998)). In evaluating a claim for excessive force, the issue is whether the defendant "inflicted unnecessary and wanton pain and suffering." *Id.* at 446 (citing *Taylor*, 155 F.3d at 483). In determining whether this constitutional line has been crossed, the court must look to such factors as: (1) the need for the application of force; (2) the relationship between the need and the amount of force used; (3) the extent of the injury inflicted; and (4) whether the force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the

8

very purpose of causing harm. *Id.* at 446 (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

Viewing the facts in the light most favorable to the Plaintiff, a reasonable jury could believe Plaintiff's allegations regarding the restraints and infer Deputy Clark's actions were not a "good faith effort to restore order" but, rather, wanton and unnecessary. Deputy Clark does not dispute that Plaintiff wore leg restraints during the transfer and Plaintiff does not contend that leg restraints were inappropriate under the circumstances. The central factual issue in this case is whether the restraints were fastened too tightly despite Plaintiff's protestations.

Defendants argue the documentary evidence from Plaintiff's transfer to and intake at YCDC do not support Plaintiff's allegations. Defendants specifically point to the "Initial Intake/Triage Questions" completed by Deputy Clark on July 17, 2009 indicating that Plaintiff had not been injured and had no observable medical problems, but documenting Plaintiff's history of back problems. [Entry #33-1 at 10; Entry #33-9].

Despite Plaintiff allegedly having no observable injuries, the nurse's notes from two days later, while not referencing the alleged tightness of the restraints, do document a "red warm area from [Plaintiff's] ankle to mid calf with several abrasions." [Entry #33-15 at 1]. In addition, an emergency department record dated July 24, 2009 states Plaintiff's right lower leg had "erythema with some crusting and oozing." [Entry #55-2 at 2]. Furthermore, Plaintiff has produced photographs allegedly taken from July 19, 2009 to July 27, 2009 document significant redness and worsening sores over the week following Plaintiff's discharge from YCDC. [Entry #55-3 at 1–18]. These records in

combination demonstrate Plaintiff had a visible injury and that he attributed that injury to the leg restraints. The undersigned does not find plausible Defendants' contention that the abrasions on Plaintiff's right leg noted by the YCDC nurse "can easily be explained as resulting from Plaintiff himself scratching an area where he had cellulitis." [Entry #33-1 at 9].

While "not every push or shove, even if it may later seem unnecessary" is serious enough to entail a deprivation of a constitutional right, *Graham v. Connor*, 490 U.S. 386, 396 (1989), the facts, here, when viewed in the light most favorable to Plaintiff, are sufficient to support a jury finding that Deputy Clark used excessive force in tightening Plaintiff's leg restraints. Consequently, the undersigned recommends a finding that Plaintiff has sufficiently alleged a violation of his Fourteenth Amendment right to be free from excessive force against Deputy Clark.

4. Qualified Immunity

Defendants assert, to the extent Plaintiff's constitutional rights were violated, they are entitled to qualified immunity. Because the undersigned has recommended the dismissal of Sheriff Bryant and the medical indifference claim, the sole remaining issue before the court is whether Deputy Clark is entitled to qualified immunity for the excessive force claim.

The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by this immunity. The *Harlow* court held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct

does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818.

In addressing qualified immunity, the Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998).

Having found that the alleged excessive force by Deputy Clark may reasonably be considered a violation of Plaintiff's constitutional right, the undersigned must determine whether that right was "clearly established" at the time of the violation. It was clearly established at the time of the incident that an arrestee or pretrial detainee is protected from the use of excessive force. *Orem*, 523 F.3d at 448 (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)). Defendants do not argue that Plaintiff's right to be free of the alleged excessive force alleged is not clearly established. To the contrary, Defendants admit "Deputy Clark had not only the right but also the *duty* to safely restrain the Plaintiff

during the journey from Georgia back to the YCDC." [Entry #33-1 at 10 (emphasis in original)].

Deputy Clark asserts, however, that he is entitled to qualified immunity because his conduct was objectively reasonable. "Because 'police officers are often forced to make split-second judgments—in circumstance that are tense, uncertain, and rapidly evolving,' the facts must be evaluated from the perspective of a reasonable officer at the scene, and the use of hindsight must be avoided." *Waterman v. Batton*, 393 F.3d 471, 476–77 (4th Cir. 2005) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)) (internal citations omitted). Hence, qualified immunity will shield Deputy Clark from suit if "a reasonable officer" could have believed the tightness of the restraints on Plaintiff was lawful, in light of the clearly established law and the information Deputy Clark possessed at the time. *Hunter v. Bryant,* 502 U.S. 224, 227 (1991).

Plaintiff contends he complained several times on the trip from Georgia to YCDC that the restraints were too tight and were causing him severe pain. [Entry #1 at 3]. Accepting Plaintiff's allegations as true, Deputy Clark was aware for several hours that the restraints were too tight. Taken in the light most favorable to Plaintiff, the undersigned is constrained to recommend finding that Deputy Clark's failure to check the tightness of Plaintiff's restraints was not objectively reasonable. Thus, qualified immunity does not apply and it is recommended that Plaintiff's excessive force claim survive summary judgment.

III. Conclusion

For the foregoing reasons, it is recommended that Defendants' motion for summary judgment [Entry #33] be granted as to Sheriff Bryant and Plaintiff's claim of medical indifference and denied as to Plaintiff's claim of excessive force.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

May 30, 2012  
Columbia, South Carolina

Shiva V. Hodges  
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).