IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| James M. Branham, | ) | C/A No.: 1:11-1246-JFA-SVH |
| Plaintiff, | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| Sheriff Bruce M. Bryant, sued in his individual capacity; John A. Clark, | ) | |
| Defendants. | ) | |

Plaintiff James M. Branham ("Plaintiff"), proceeding *pro se* and in forma pauperis, brought this action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights while he was a pretrial detainee being transferred to and incarcerated at York County Detention Center ("YCDC"). Plaintiff names Sheriff Bruce M. Bryant ("Sheriff Bryant") and Deputy John A. Clark[1] ("Deputy Clark") (collectively "Defendants"), employees of York County Sheriff's Office ("YCSO"), as Defendants. This matter is before the court on Defendants' second motion for summary judgment. [Entry #84]. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2)(d) (D.S.C.). Because the motion is dispositive, this Report and Recommendation is entered for review by the district judge. For the reasons stated herein, it is recommended that Defendants' second motion for summary judgment be granted.

---

[1] Though originally identified as John Doe in the complaint, defendants later identified Deputy Clark as the officer who transported Plaintiff to YCDC. [Entry #33-1 at 1].

I. Factual and Procedural Background

Plaintiff alleges that while being transported from the Cherokee County Detention Center in Georgia to YCDC on July 17, 2009, his leg restraints were too tight and caused him severe pain. [Entry #1 at 3]. He claims defendant Deputy Clark repeatedly ignored his complaints during the trip. *Id.* Upon arrival at YCDC, Plaintiff contends his right leg was swollen and infected from ankle to knee. *Id.* Plaintiff alleges "several officers and various staff members" ignored his continued complaints and his cellmate's three attempts to get medical attention for him. *Id.* at 3–4. He was eventually escorted to see the YCDC nurse who gave him antibiotics. *Id.* at 4.

The nurse's notes indicate she saw Plaintiff on July 19, 2009. [Entry #33-15 at 1]. Plaintiff complained of right lower leg rash and pain. *Id.* The nurse observed a "red warm area from ankle to mid calf with several abrasions," diagnosed probable cellulitis, and prescribed a seven-day treatment of Keflex. *Id.* The nurse's notes do not state what may have caused the cellulitis.

Plaintiff claims he posted bond and was released on July 19, 2009, at which time a friend took photographs of his leg. [Entry #1 at 4]. Plaintiff went to the emergency room at Northside Hospital in Cherokee, Georgia on July 24, 2009. [Entry #55-2 at 2]. The emergency room report indicates Plaintiff "apparently was incarcerated, had cuffs around both feet, apparently has developed an infection, was transported up to South Carolina where he stayed for a week." *Id.* Plaintiff reported his symptoms had improved on Keflex, but stated he had run out of the prescription and still had continued erythema and

swelling in his right lower leg. *Id.* The treating physician prescribed pain medicine and a new antibiotic and instructed Plaintiff to return for any problems or worsening symptoms. *Id.* at 3. The record also notes Plaintiff's glucose was high and that his probable new-onset diabetes likely contributed to his cellulitis. *Id.* Plaintiff alleges he later followed up with both his personal doctor and a dermatologist regarding the problems with his leg. [Entry #1 at 4].

Almost two years later, Plaintiff sent a handwritten document entitled "York County Sheriff's Dept Grievance Form" to Sheriff Bryant on March 15, 2011. [Entry #33-12]. In it, Plaintiff summarizes his allegations regarding the tight leg restraints and his subsequent injuries. *Id.* He also notes that he is attempting to exhaust his administrative remedies. *Id.* General counsel for YCSO replied on April 6, 2011, informing Plaintiff that, following an investigation, YCSO determined Plaintiff was provided with appropriate medical treatment and that YCSO was not liable for any of his alleged damages. [Entry #33-13 at 1–2]. YCSO also noted that Plaintiff failed to file his grievance within 72 hours of the incident or event that is the basis for his grievance as required by Section 609.00 of the York County Detention Center Inmate Handbook. *Id.* at 1. Plaintiff filed this lawsuit on May 25, 2011. [Entry #1]. He seeks compensatory damages for the alleged physical and emotional injuries he claims to have sustained during the transport and for Defendants' alleged failure to provide adequate medical care. *Id.* at 5. He also seeks punitive damages. *Id.*

Defendants filed their original motion for summary judgment on December 13, 2011. [Entry #33]. On May 30, 2012, after the motion was fully briefed, the undersigned

issued a Report and Recommendation ("R&R") recommending summary judgment be denied, based on the record at that time and noting that Defendants had not argued that Plaintiff failed to exhaust his administrative remedies. [Entry #68]. Defendants filed objections to the R&R and a motion to amend their answer to add an affirmative defense of Plaintiff's failure to exhaust administrative remedies. [Entry #70, #71]. Plaintiff filed responses to the objections and the motion to amend. [Entry #79, #80]. The Honorable Joseph F. Anderson, Jr. declined to adopt the R&R and granted Defendants' motion to amend their answer. [Entry #82]. Thereafter, Defendants filed their amended answer and submitted the instant second motion for summary judgment. [Entry #83, #84]. Plaintiff filed a response to the motion on September 10, 2012 [Entry #85] and Defendants filed a reply on September 20, 2012. [Entry #86].

II. Discussion

    A. Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those

made for purposes of the motion only), admissions, interrogatory answers, or other materials; " or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

    B.    Analysis

Defendants' second motion for summary judgment argues that Plaintiff has failed to exhaust his administrative remedies for his claim and it is therefore barred. Plaintiff argues that he was not required to exhaust his administrative remedies because (1) his claims do not derive from "prison conditions" and (2) he should not be considered a prisoner under the statute.

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (codified as amended at 42 U.S.C. § 1997e(a) (1996)), mandates, among other things, that prisoners exhaust their administrative remedies prior to filing civil actions. *See Jones v. Bock*, 549 U.S. 199, 211, (2007); *Booth v. Churner*, 532 U.S. 731 (2001). Exhaustion is required for "[a]ll action[s]. . . brought with respect to prison conditions, whether under § 1983 or any other Federal law." *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (internal quotations omitted). The PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.*, 534 U.S. at 532. Exhaustion is a threshold requirement that must be satisfied in order for prisoner complaints to proceed. *See Jones*, 549 U.S. at 216; *Booth*, 532 U.S. at 741. Although PLRA exhaustion is not jurisdictional, failure to exhaust is an affirmative defense that can be pleaded by the defendants. *Jones*, 549 U.S. at 216. No unexhausted claims may be considered by the court; such claims must be dismissed. *Jones*, 549 U.S. at 211. The PLRA requires "proper" exhaustion, that is, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

1. Whether conditions during transport constitute prison conditions

Plaintiff argues that the PLRA did not apply to him because his claim of excessive force occurred while he was in transport and was therefore not a result of "prison conditions." Courts have held that the scope of 42 U.S.C. § 1997e(a) is defined by Congress in 18 U.S.C. § 3626(g)(2) as follows:

> [T]he term "civil action with respect to prison conditions" means any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison. . . .

*Id.*; *see also Freeman v. Francis*, 196 F.3d 641, 644 (6th Cir. 1999); *Booth v. Churner*, 206 F.3d 289 (3d Cir. 2000). In the instant case, Plaintiff's injury allegedly stemmed from his leg restraints being too tight while he was transported from a Georgia detention center to YCDC.

The undersigned finds that Plaintiff's claim is a civil action with respect to prison conditions, because it relates to the effect of actions by a government official on the life of a person confined in prison. It is undisputed that Plaintiff was in pre-trial custody from the time he was arrested in Canton, Georgia on July 10, 2009 until July 19, 2009 when he posted bond. During the transport, Plaintiff was under the care, custody, and control of the prison officials for a purpose directly related to the prisoner's incarceration. Although Plaintiff was not physically in a prison during the transport, his status as a person "confined in prison" does not appear to have changed. The undersigned finds no reasoning for the assertion that Congress intended an exception from the PLRA for prisoners who, though they are indisputably in the custody of prison officials, are in transport during the time of their alleged injury. Therefore, the undersigned recommends the district judge find that Plaintiff's claim constitutes a "prison conditions" claim under the PLRA, which requires Plaintiff to have exhausted his administrative remedies.

> 2. Whether Plaintiff was a prisoner pursuant to the PLRA at the time of filing

Plaintiff also argues that he should not be considered a prisoner for the purposes of this case. Plaintiff does not dispute that he was incarcerated at the YCDC at the time he filed this case. However, Plaintiff argues that he should not be treated as a confined prisoner for the purposes of this action because he was released from YCDC less than 72 hours after the alleged use of excessive force. Plaintiff notes that courts have found that prisoners who file prison condition cases after release from prison are not required to exhaust administrative remedies because they are no longer prisoners. *See e.g.*, *Wilson v. Hampton County*, C.A. 9:05-1777PMD, 2005 WL 2877725 (D.S.C. Oct. 31, 2005); *Nerness v. Johnson*, 401 F.3d 874, 876 (8th Cir. 2005). Plaintiff argues that treating him as a prisoner in this instance will leave him without a remedy, as he will no longer be able to exhaust his administrative remedies.

The PLRA defines "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). Plaintiff did not file this case until May 25, 2011, at which time he was detained in the YCDC on another charge. Therefore, by the terms of the statute, the PLRA clearly applied to Plaintiff as a prisoner.

The undersigned is not persuaded that Plaintiff should be treated as a former prisoner based on his release from the YCDC shortly after the incident. One of the reasons exhaustion is required is to allow prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court.

8

*Jones*, 549 U.S. at 204. When a grievance is filed shortly after the event giving rise to the grievance, witnesses can be identified and questioned while memories are still fresh, and evidence can be gathered and preserved. *Woodford*, 548 U.S. at 95. Here, in addition to failing to file a grievance during the days immediately following his alleged injury, Plaintiff also failed to make any attempts to litigate this action while he was released. Although Plaintiff now complains that he will be foreclosed from pursuing a remedy if the court finds exhaustion is required, any lost opportunity is a direct result of his own failure to pursue his claim in any way for almost two years. Because Plaintiff was a prisoner at the time he filed this action, he was required to exhaust his administrative remedies under the PLRA. Therefore, the undersigned recommends the district judge grant Plaintiff's second motion for summary judgment because Plaintiff was required to exhaust his administrative remedies, but failed to do so.

III. Conclusion

For the foregoing reasons, the undersigned recommends Defendants' second motion for summary judgment [Entry #84] be granted and this case be dismissed with prejudice.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

September 28, 2012  Shiva V. Hodges
Columbia, South Carolina  United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

9

### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).